Matthew D. Haley, Esq.
State Bar No.: 104493
Michael C. Haley, Esq.
State Bar No.: 326066
THE HALEY LAW OFFICES P.C.
1633 San Pablo Avenue
Oakland, CA 94612-1505
Telephone: (510) 444-1881
Facsimile: (510) 444-5108
Email: matt@haleylaw.com
Email: michael@haleylaw.com
Email: service@haleylaw.com

Attorneys for Plaintiff ALI BADR

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALI BADR | Hon. |
| Plaintiff, | Case No.: |
| v. | **PLAINTIFF'S COMPLAINT FOR DAMAGES** |
| CITY OF SAN RAMON, a public entity; CITY OF SAN RAMON POLICE CHIEF CRAIG STEVENS; SAN RAMON POLICE OFFICERS JOHN CATTOLICO, LEYSY PELAYO, ERIC VAN SCOY, KYLE LEANO, KEITH TESTERMAN, SEAN ALLEN, KEVIN GIOVANNONI; HYRECAR INC., a Delaware corporation; CARMOMMY RENTALS LLC, a California limited liability company;  JOHN BLOMEKE and Defendant Does 1 through 50, inclusive, | **1. Unreasonable Search and Seizure – Detention and Arrest (42 U.S.C. 1983)** **2. Unreasonable Search and Seizure – Excessive Force (42 U.S.C. § 1983)** **3. Municipal Liability for Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983)** **4. Assault and Battery** **6. Violation of Bane Civil Rights Act (Civil Code § 52.1)** **6. Negligence  (Against CITY OF SAN RAMON, CRAIG STEVENS, JOHN CATTOLICO, LEYSY PELAYO, ERIC VAN SCOY, KYLE LEANO, KEITH TESTERMAN, SEAN ALLEN, and KEVIN GIOVANNONI** |
| Defendants. | **7. Negligence (Against HYRECAR INC., CARMOMMY RENTALS LLC., and JOHN BLOMEKE).** |

)   **DEMAND FOR JURY TRIAL**
)
)

Plaintiff, by and through his attorneys, THE HALEY LAW OFFICES P.C., for his

complaint against Defendants states as follows:

## JURISDICTION AND VENUE

1.      This civil action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth

and Fourteenth Amendments to the United States Constitution, as well as the laws and Constitution

of the State of California.  Jurisdiction is founded on  28 U.S.C. §§ 1331, 1343, and 1367.

2.      Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391,

because a substantial part of the events, incidents, events, occurrences and/or omissions occurred in

the City of San Ramon, Contra Costa County, California.

## PARTIES AND THEIR AGENTS

3.      Plaintiff ALI BADR (hereinafter, "BADR" or "Mr. BADR") is a resident of the

State of California.

4.      Defendant CITY OF SAN RAMON is a municipal corporation duly organized and

existing under the Constitution and laws of the State of California, and owns, operates, manages,

directs, and controls the SAN RAMON Police Department (hereinafter, "SCPD") which employs

other defendants in this action.

5.      Defendant CITY OF SAN RAMON CHIEF OF POLICE CRAIG STEVENS

(hereinafter, "STEVENS") at all material times was the Chief of Police for the San Ramon Police

Department and was acting within the course and scope of that employment.  In that capacity,

Defendant STEVENS was a policy making officer for the CITY OF SAN RAMON.

6.      Defendant JOHN CATTOLICO (hereinafter, "CATTOLICO") at all material times

was employed as a law enforcement officer by SRPD.  He is sued in his individual and official

capacity.  CATALLICO'S conduct as alleged in this claim occurred during his employment and performance of his duties for SRPD, an agency of the CITY OF SAN RAMON.

7.      Defendant LEYSY PELAYO (hereinafter, "PELAYO") at all material times was employed as a law enforcement officer by SRPD.  She is sued in his individual and official capacity.  PELAYO'S conduct as alleged in this claim occurred during her employment and performance of her duties for the SRPD, an agency of the CITY OF SAN RAMON.

8.      Defendant ERIC VAN SCOY (hereinafter, "VAN SCOY") at all material times was employed as a law enforcement officer by SRPD.  He is sued in his individual and official capacity.  VAN SCOY'S conduct as alleged in this claim occurred during his employment and performance of his duties for the SRPD, an agency of the CITY OF SAN RAMON.

9.      Defendant KYLE LEANO (hereinafter, "LEANO") at all material times was employed as a law enforcement officer by SRPD.  He is sued in his individual and official capacity.  LEANO'S conduct as alleged in this claim occurred during his employment and performance of his duties for the SRPD, an agency of the CITY OF SAN RAMON.

10.     Defendant KEITH TESTERMAN (hereinafter, "TESTERMAN") at all material times was employed as a law enforcement officer by SRPD.  He is sued in his individual and official capacity.  TESTERMAN'S conduct as alleged in this claim occurred during his employment and performance of his duties for the SRPD, an agency of CITY OF SAN RAMON.

11.     Defendant SEAN ALLEN (hereinafter, "ALLEN") at all material times was employed as a law enforcement officer by SRPD.  He is sued in his individual and official capacity.  ALLEN'S conduct as alleged in this claim occurred during his employment and performance of his duties for the SRPD, an agency of the CITY OF SAN RAMON.

12.     Plaintiff is informed and believes, and on that basis allege, that Defendant KEVIN GIOVANNONI (hereinafter, "GIOVANNONI") at all material times was employed as a law

enforcement officer by SRPD.  He is sued in his individual and official capacity. GIOVANNONI'S conduct as alleged in this claim occurred during his employment and performance of his duties for the SRPD, an agency of the CITY OF SAN RAMON.

13.    At all material times, each Defendant SRPD law enforcement officer identified above acted under the color of law, statutes, ordinances, and regulations of the State of California and the CITY OF SAN RAMON.

14.    Defendant HYRECAR INC. is a Delaware corporation with their principal place of business at 355 S. Grand Ave. Ste. 1650, Los Angeles, California 90071, and owns, operates, manages, directs, and controls an online car-sharing platform that allows car owners, including Defendant CARMOMMY RENTRALS LLC, to rent cars to drivers for compensation.

15.    Defendant CARMOMMY RENTALS LLC (hereinafter, "CARMOMMY") is a California limited liability corporation with their principal place of business at 3410 Monterey Hwy. San Jose, California 95111, and owns, operates, manages, directs, and controls a car rental service.

16.    Defendant JOHN BLOMEKE (hereinafter, "BLOMEKE") is an individual residing in Santa Clara County, California and at all material times was a principle for the Defendant CARMOMMY.  He is sued in his individual and official capacity.  BLOMEKE'S conduct as alleged in this claim occurred during his employment and performance of duties for CARMOMMY.

17.    The true names or capacities, whether individual, corporate, associate or otherwise, of Defendants Doe One through Doe Fifty, inclusive, are unknown to Plaintiff who therefore sues said Defendants by such fictitious names.  Plaintiff will amend his complaint by inserting the true names or capacities, with appropriate charging allegations, when the same is ascertained.  Plaintiff is informed and believes and based thereon alleges that each of the Defendants named herein as a

Doe is negligently or in some other manner responsible for the events and happenings herein referred to and caused injury and damages thereby to the Plaintiff as herein alleged.

18.     Plaintiff is informed and believes, and thereon alleges, that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiff is further informed and believes, and thereon alleges, that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter otherwise specifically alleged.

## GENERAL ALLEGATIONS

19.     The allegations Plaintiff sets forth in this complaint are hereby re-alleged and incorporated by reference.

20.     On or about August 28, 2020, Plaintiff BADR entered into a vehicle rental agreement with Defendants HYRECAR INC., CARMOMMY, and BLOMEKE for temporary rental of a gray 2017 Toyota Camry bearing, license plate 8LJY156 (hereinafter, "Camry") from Defendant CARMOMMY.  At all material times, Defendant BLOMEKE was the registered owner of said Camry.  According to the HYRECAR INC. Vehicle Rental Agreement, the term of the agreement began on August 28, 2020, and ended on December 23, 2020.  Attached herein as Exhibit "A" is a true and correct copy of the  HYRECAR Vehicle Rental Agreement.

21.     On or about December 20, 2020, Plaintiff BADR was lawfully operating said Camry in the City of San Ramon California.  Unknown to BADR, said Camry had wrongfully been reported as stolen by Defendant BLOMEKE.

22.     At approximately 6:20 p.m. on December 20, 2020, BADR was stopped while operating said Camry by Defendant SRPD law enforcement officers CATTOLICO, PELAYO,

VAN SCOY, LEANO, TESTERMAN, ALLEN, and GIOVANNONI at or near the intersection of San Ramon Valley Blvd. and Crow Canyon Road in the City of San Ramon, California. Plaintiff stopped said Camry on the side of San Ramon Valley Blvd., making no attempt to flee. BADR complied with multiple officer instruction to present his hands through the window of said Camry, to exit said Camry, and to make his hands visible to SRPD officers upon exiting. BADR exited said Camry and stepped onto San Ramon Valley Blvd. with no shoes on. As BADR exited the vehicle he placed his shoes on the ground and next to said Camry.

23. On information and belief, responding officers CATTOLICO, PELAYO, VAN SCOY, LEANO, TESTERMAN, ALLEN, and GIOVANNONI had no information that any serious crime was in progress, that any violent crime had been committed, that anyone was injured, that any threats had been made, that the BADR was armed, or that BADR posed danger to the public. Defendant officers had BADR surrounded with no means of escape.

24. Nonetheless, Defendants PELAYO, VAN SCOY, LEANO, TESTERMAN, ALLEN, and GIOVANNONI trained their firearms and took defensive positions while Defendant CATALLICO waited behind an SRPD squad car with a police K-9.

26. Once out of said Camry, BADR placed his hands on the roof and side of the vehicle. Lights from SRPD squad cars illuminated BADR'S hand which were visibly empty. With his hands remaining on the exterior of the vehicle in the surrender position BADR attempted to put his shoes on.

27. Growing inpatient, Defendant CATTOLICO then walked a police K-9 from behind his defensive position up to within a few feet of BADR. Without warning and/or advising BADR, Defendant CATALLICO deployed the police K-9 to attack and bite Plaintiff even though Plaintiff was peaceful, compliant, had his hands visibly raised in a surrender position, was not armed, was

not trying to evade arrest, posing no threat to the officers or to anyone else, and while Plaintiff was surrounded by Defendant SRPD officers with their firearms trained on him.

27.     With the K-9 still latched onto BADR, ripping and tearing at his arm and hand while BADR screamed in pain, CATTOLICO walked toward Plaintiff while removing his service weapon and pointing it directly at BADR'S face.  Defendant CATTOLICO then grabbed BADR'S left arm, with the K-9 remaining latched on to Plaintiff's right arm, and threw BADR to the ground in the prone position, knelt on BADR's back, and grabbed BADR's neck and forced his face into the pavement.

28.     As CATTOLICO moved off Plaintiff, Defendants GIOVANNONI and ALLEN knelt on Plaintiff's back while he remained on the pavement in the prone position.  GIOVANNONI placed a handcuff on Plaintiff's left wrist while the police K-9 continued to tear at BADR'S right arm and hand.  Once the K-9 was removed, officer ALLEN violently tore back Plaintiff's bleeding and torn arm behind Plaintiff's back while GIOVANNONI placed handcuffs on Plaintiff's right wrist.  GIOVANNONI then wiped an unknown substance off his hand on Plaintiff's back.

29.     The police K-9 was allowed to continue biting the Plaintiff's for over 50 seconds, before being pulled away.  As a result, Plaintiff suffered extensive and permanent damage to his arm and hand.

30.     Upon information and belief PELAYO, VAN SCOY, LEANO, TESTERMAN, ALLEN, GIOVANNONI were aware that Defendant CATTOLICO intended to release the police K-9, took any actions to prevent, or otherwise intervened, in the use of force against Plaintiff, who was fully cooperative at the time the police K-9 was released.  All of the above officers failed to intervene against the use of excessive force.  Furthermore, Defendants PELAYO, VAN SCOY, TESTERMAN, ALLEN, GIOVANNONI, were all integral participants in the use of force by

Defendant CATTOLICO and in the seizure of Plaintiff by, among other things, training their weapons on Plaintiff while he was being seized.

31.     As a result of Defendants' actions, Plaintiff suffered severe physical and psychological injuries as a result of the force used against him.  To this day, Plaintiff has not regained full use of his arm and hand and suffers from significant scarring.

32.     The relentless mauling attack by the police K-9 which tore deep flesh wounds was unleashed by Officer CATALLICO on BADR while defenseless has left him with severe unsightly injuries.  His injuries include, but are not limited to, deep flesh wounds on his right hand and arm, profuse bleeding, and scars from the teeth that tore into BADR's body for an unreasonable amount of time while he screamed of pain and pled for help and release from the jaws of a large canine. Plaintiff had to undergo several surgeries and procedures as a result of Defendants' actions.

33.     The pain suffered from Defendants' acts have required medical attention.  In addition, future physical and emotional harm including, but not limited to, physical pain, nausea, anxiety, paranoia, depression, body aches, scar tissue, headaches, memory loss, and fear plague Mr. BADR.  Plaintiff has undergone substantial mental health treatment and therapy as a result of Defendants' actions.

34.     Mr. BADR'S pain and suffering continues and may worsen as time passes despite efforts to seek relief.

35.     On or around June 16, 2021, Plaintiff timely filed comprehensive claims for damages in accordance with Government Code § 910 et. seq., and this action is timely filed within all applicable statutes of limitation.

//
//
//
//

1

2

**FIRST CAUSE OF ACTION**

3

**Unreasonable Search and Seizure - Detention and Arrest (42 U.S.C. § 1983)**

4

(By Plaintiff against Defendants CATTOLICO, PELAYO, VAN SCOY, LEANO, TESTERMAN,

5

ALLEN, GIOVANNONI and DOES 1 through 50)

6

7        36.     Plaintiff  re-alleges the information set forth in the preceding paragraphs and

8    incorporates them into this cause of action as if they were fully alleged herein.

9        37.     The Fourth Amendment to the United States Constitution prohibits detention

10    without reasonable suspicion and arrest without probably cause.

11        38.     When Defendant CATTOLICO, with assistance from Defendants PELAYO, VAN

12    SCOY, LEANO, TESTERMAN, ALLEN, GIOVANNONI, and DOES 1-50 encountered BADR,

13    they had never seen him before, knew nothing about him, and did not observe him to be in the

14    process of committing any crime.  BADR was unarmed, he had not threatened anyone, had not

15    harmed anyone, and CATTOLICO, PELAYO, VAN SCOY, LEANO, TESTERMAN, ALLEN,

16    GIOVANNONI, and DOES 1-50 had no information that anyone was injured and no information

17    that BADR had any criminal history.

18        39.     Despite this, Defendant CATTOLICO, with assistance from Defendants PELAYO,

19    VAN SCOY, LEANO, TESTERMAN, ALLEN, GIOVANNONI as integral participants acting

20    under color of  law, used unreasonable and excessive force, to interfere with BADR's individual

21    liberty and in an attempt to take BADR into custody.  BADR did not feel free to leave and any

22    reasonable person in BADR'S position would have felt their liberty restricted by the actions of the

23    defendants.  The actions of the defendants amounted to detention without reasonable suspicion

24    and/or arrest without probable cause.  BADR claims both that the detention and/or arrest itself was

25

26

27

28

unreasonable and also that the manner and scope of the detention and/or arrest was unreasonable in violation of the Fourth Amendment.

40.     Defendant CATTOLICO, PELAYO, VAN SCOY, LEANO, TESTERMAN, ALLEN, GIOVANNONI, and DOES 1-50 subjected Plaintiff to their wrongful conduct, depriving Plaintiff of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff would be violated by their acts and/or omissions.

41.     As a result of the conduct of CATTOLICO, PELAYO, VAN SCOY, LEANO, TESTERMAN, ALLEN, GIOVANNONI, and DOES 1-50 are liable for BADR'S injuries, either because they were integral participants in the unreasonable seizure, or because they failed to intervene to prevent these violations.

42.     The conduct of Defendants CATTOLICO, PELAYO, VAN SCOY, LEANO, TESTERMAN, ALLEN, GIOVANNONI, and DOES 1-50 was willful, wanton, malicious and done with a reckless disregard for the rights and safety of BADR and therefore warrants the imposition of exemplary and punitive damages against them.

43.     Accordingly, Defendants CATTOLICO, PELAYO, VAN SCOY, LEANO, TESTERMAN, ALLEN, GIOVANNONI, and DOES 1-50 each are liable to Plaintiff for compensatory and punitive damages under 42 U.S.C. §1983.

44.     Plaintiff also seeks attorney fees under this claim.

## SECOND CAUSE OF ACTION

### Unreasonable Search and Seizure - Excessive Force (42 U.S.C. § 1983)

(By Plaintiff against Defendants CATTOLICO, PELAYO, VAN SCOY, LEANO, TESTERMAN, ALLEN, GIOVANNONI and DOES 1 through 50)

45.     Plaintiff  re-alleges the information set forth in the preceding paragraphs and incorporates them into this cause of action as if they were fully alleged herein.

46.     The Fourth Amendment to the United States Constitution prohibits the use of excessive or unreasonable force against a person in order to apprehend or take them into custody. Here, Defendant CATTOLICO, with assistance from Defendants PELAYO, VAN SCOY, LEANO, TESTERMAN, ALLEN, GIOVANNONI, and DOES 1-50, as integral participants acting under color of law, used unreasonable and excessive force, by deliberately and intentionally deploying a police K-9 to attack and bite the Plaintiff, when at the time of this deployment (i) Plaintiff's hands were visible and were up in surrender;  (ii) Plaintiff was unarmed;  (iii) Plaintiff did not pose any threat to any of the defendants or bystanders;  (iv) Plaintiff was not attempting to flee or evade arrest;  and (v) other alternative methods were available to effectuate a seizure.

47.     Defendant CATTOLICO, with assistance from Defendants PELAYO, VAN SCOY, LEANO, TESTERMAN, ALLEN, GIOVANNONI as integral participants acting under color of law, used unreasonable and excessive force, by deliberately and intentionally allowing the K-9 to continue to bite the Plaintiff for over 50 seconds while (i) Plaintiff was laying on his stomach deploying with his hands stretched out in complete surrender; (ii) Plaintiff was unarmed; (iii) Plaintiff was completely surrounded by Defendants PELAYO, VAN SCOY, LEANO, TESTERMAN, ALLEN, GIOVANNONI, and Does 1 through 50, with their firearms drawn (iv) Plaintiff did not pose any threat to any of the defendants or bystanders;  (v) Plaintiff was not attempting to flee or evade arrest;  and (vi) other alternative methods were available to effectuate a seizure.

48.     Defendants subjected Plaintiff to their wrongful conduct, depriving Plaintiff of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff would be violated by their acts and/or omissions.

49.     As a result of the conduct of CATTOLICO, PELAYO, VAN SCOY, LEANO, TESTERMAN, ALLEN, GIOVANNONI, and DOES 1-50, they are liable for BADR'S injuries, either because they were integral participants in the unreasonable seizure, or because they failed to intervene to prevent these violations.

50.     The conduct of Defendants CATTOLICO, PELAYO, VAN SCOY, LEANO, TESTERMAN, ALLEN, GIOVANNONI, and DOES 1-50 was willful, wanton, malicious and done with a reckless disregard for the rights and safety of BADR and therefore warrants the imposition of exemplary and punitive damages against them.

51.     Accordingly, Defendants CATTOLICO, PELAYO, VAN SCOY, LEANO, TESTERMAN, ALLEN, GIOVANNONI, and DOES 1-50 each are liable to Plaintiff for compensatory and punitive damages under 42 U.S.C. §1983.

52.     Plaintiff also seeks attorney fees under this claim.

### THIRD CAUSE OF ACTION

**Municipal Liability – Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

(By Plaintiff against Defendants CITY OF SAN RAMON, CHIEF OF POLICE CRAIG STEVENS, and DOES 1-50)

53.     Plaintiff  re-alleges the information set forth in the preceding paragraphs and incorporates them into this cause of action as if they were fully alleged herein.

54.     On information and belief, the unconstitutional actions and/or omissions of Defendants, were pursuant to the following customs, policies, practices, and/or procedures of the SCPD and/or CITY OF SAN RAMON, which were directed, encouraged, allowed, and/or ratified by Defendant STEVENS and other policy making officers for the CITY OF SAN RAMON and the SRPD:

(a)  Using excessive force;

(b)  Providing inadequate training regarding the use of excessive force;

(c)  Employing and retaining as officers individuals such as Defendant CATTOLICO and DOE officers,  whom Defendant CITY OF SAN RAMON at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force;

(d)  Inadequately supervising, training, controlling, assigning, and disciplining SRPD officers, and other personnel, who Defendant CITY OF SAN RAMON knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

(f)  Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by SRPD officers;

(g)  Failing to adequately discipline SRPD officers for the above-referenced categories of misconduct, including "slaps on the wrist," discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

(h)  Announcing that excessive use of force is "within policy," including conduct that was later determined in court to be unconstitutional;

(i)  Even where use of force is determined in court to be excessive, refusing to discipline, terminate, or retrain the deputies involved;

(j)  Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simply "code of silence," pursuant to which police officers do not report other officers' errors, misconduct, or crimes. Pursuant

to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other officers' wrongdoing.

(k) Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of police officers excessive use of force, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution.

55.    Defendants CITY OF SAN RAMON, STEVENS, and DOES 1-50, failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants, with deliberate indifference to Plaintiff's constitutional rights, which were thereby violated as described above.

56.    The unconstitutional actions and/or omissions of Defendants, as described above, were approved, tolerated and/or ratified by Defendant STEVENS and other policy-making officers for the SRPD.  Plaintiff is informed and believes, and thereupon alleges, that the details of this incident have been revealed to the authorized policy makers within the CITY OF SAN RAMON, and Plaintiff is further informed and believes, and thereupon alleges, that such policy makers have direct knowledge of the facts of this incident.  Notwithstanding this knowledge, the authorized policy makers within the CITY OF SAN RAMON, have approved of the conduct of Defendants, and have made a deliberate choice to endorse the decisions of those defendant officers and the basis for those decisions.  By doing so, the authorized policy makers of the CITY OF SAN RAMON, have shown affirmative agreement with each individual Defendant officer's actions, and have ratified the unconstitutional acts of the individual Defendant officers.

57.    The aforementioned customs, policies, practices, and procedures, the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline, as well as the unconstitutional orders, approvals, ratification and toleration of wrongful

conduct of Defendants CITY OF SAN RAMON, STEVENS and DOES 1-50 were a moving force and/or a proximate cause of the deprivations of Plaintiff's clearly established and well-settled constitutional rights in violation of 42 U.S.C. §1983.

58.     Defendants subjected Plaintiff to their wrongful conduct, depriving Plaintiff of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff and others would be violated by their acts and/or omissions.

59.     As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices and procedures of Defendants as described above, Plaintiff sustained serious injuries and is entitled to damages, penalties, costs and attorney fees as set forth in above, and punitive damages against DEFENDANT STEVENS and DOES 1-50, in their individual capacities. Plaintiff does not seek punitive damages against Defendant CITY OF SAN RAMON.

## FOURTH CAUSE OF ACTION

### Assault and Battery (Gov. Code § 820 and California Common Law)

(By Plaintiff against Defendants CATTOLICO, ALLEN, GIOVANNONI, DOES 1-50, and CITY OF SAN RAMON)

60.     Plaintiff re-alleges the information set forth in the preceding paragraphs and incorporates them into this cause of action as if they were fully alleged herein.

61.     At or about the dates and places alleged herein, Defendant CATTOLICO, while representing the CITY OF SAN RAMON and acting within the course and scope of his duties for SRPD, without provocation, warrant, necessity, or legal justification, assaulted and battered Plaintiff BADR by intentionally deploying a police K-9 to attack and bite Plaintiff, pointing a weapon at BADR's face, throwing BADR to the ground, kneeling on BADR'S back, and allowing the police K-9 to bite and tear BADR.

62.     Defendants ALLEN, GIOVANNONI, and DOES 1-50 while representing the CITY OF SAN RAMON and acting within the course and scope of their duties with SRPD, without provocation, warrant, necessity, or legal justification, assaulted and battered Plaintiff by deliberately and intentionally offensively touching Plaintiff, including pushing Plaintiff onto the ground, forcing Plaintiff's face into the ground, kneeling on Plaintiff's back, offensively wiping substances off Defendant's hand and onto Plaintiff's back, and handcuffing Plaintiff while the police K-9 continued to bite and tear BADR.

63.     The actions and omissions, customs, policies, and representations of Defendants, as described above, were intentional and reckless, harmful, threatening, and/or offensive, and a proximate cause of Plaintiff's damages.

64.     As a direct and proximate result of these Defendants' assault and battery, Plaintiff sustained injuries and damages, and is entitled to relief as set forth above against Defendants and DOES 1-50 under California law.  For this claim, the Defendant CITY OF SAN RAMON is vicariously liable for the conduct of their employees and agents pursuant to Cal. Gov. Code 815.2(a).

**<u>FIFTH CAUSE OF ACTION</u>**

**Violation of Bane Act (Cal. Civil Code § 52.1(b))**

(Plaintiff against Defendants CATTOLICO, PELAYO, VAN SCOY, LEANO, TESTERMAN, ALLEN, GIOVANNONI, DOES 1-50, and CITY OF SAN RAMON)

65.     Plaintiff re-alleges the information set forth in the preceding paragraphs and incorporates them into this cause of action as if they were fully alleged herein.

66.     California Civil Code Section 52.1 (the Bane Act) prohibits any person from using violent acts or threatening to commit violent acts in retaliation against another person for exercising that person's constitutional rights.

67.     Conduct that violates the Fourth Amendment violates the California Bane Act.[1]

68.     On information and belief, Defendant CATTOLICO, with assistance from Defendants PELAYO, VAN SCOY, LEANO, TESTERMAN, ALLEN, GIOVANNONI, and DOES 1-50, as integral participants acting under color of law, while representing the CITY OF SAN RAMON and acting within the course and scope of their duties, committed acts of violence against BADR including using unreasonable and excessive force, by deliberately and intentionally deploying a police K-9 to attack and bite the Plaintiff without justification or excuse, integrally participating and failing to intervene in the above violence.  Defendants' actions thus deprived Plaintiff of his right to be free from unreasonable searches and seizures and excessive force under the Fourth Amendment.

69.     On information and belief, Defendants intentionally and spitefully committed the above acts to discourage Plaintiff from exercising his civil rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights, which he was fully entitled to enjoy.

70.     On information and belief, Plaintiff  reasonably believed and understood that the violent acts committed by Defendants CATTOLICO, PELAYO, VAN SCOY, LEANO, TESTERMAN, ALLEN, GIOVANNONI, were intended to discourage him from exercising his civil rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights.

71.     Defendants' above-described conduct, while acting within the course and scope of their duties for the CITY OF SAN RAMON, constituted interference, and attempted interference, by threats, intimidation, and coercion, with decedent's peaceable exercise and enjoyment of rights

---

[1] See *Chaudhry v. City of Los* Angeles, 2014 WL 2030195, at *6 (9th Cir. May 19, 2014) (citing *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013).

secured by the Constitution and laws of the United States and the State of California, in violation of California Civil Code §52.1.

72.     The conduct of Defendants was a substantial factor in causing Plaintiff's harms, losses, injuries, and damages.

73.     Defendant CITY OF SAN RAMON is vicariously liable for the wrongful acts of Defendant CATTOLICO, with assistance from Defendants PELAYO, VAN SCOY, LEANO, TESTERMAN, ALLEN, GIOVANNONI pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

74.     Defendants DOES 2-10 are vicariously liable under California law and the doctrine of *respondeat superior*.

75.     The conduct of Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for Plaintiff's rights, justifying an award of exemplary and punitive damages as to Defendants CATTOLICO, PELAYO, VAN SCOY, LEANO, TESTERMAN, ALLEN, GIOVANNONI,

76.     Plaintiff also seeks attorney fees under this claim.

## SIXTH CAUSE OF ACTION

### Negligence; Personal Injuries

(By Plaintiff against Defendants CITY OF SAN RAMON, CHIEF OF POLICE CRAIG STEVENS, CATTOLICO, PELAYO, VAN SCOY, LEANO, TESTERMAN, ALLEN, GIOVANNONI and DOES 1 through 50)

77.     Plaintiff re-alleges the information set forth in the preceding paragraphs and incorporates them into this cause of action as if they were fully alleged herein.

78.     At all times, Defendants CITY OF SAN RAMON, CHIEF OF POLICE CRAIG STEVENS, CATTOLICO, PELAYO, VAN SCOY, LEANO, TESTERMAN, ALLEN, GIOVANNONI and DOES 1 through 50 owed Plaintiff the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

79.     At all times, each said Defendant owed Plaintiff the duty to act with reasonable care.

80.     These general duties of reasonable care and due care owed to Plaintiff by Defendants include but are not limited to the following specific obligations:

a.  to refrain from using excessive and/or unreasonable force against Plaintiff;

b.  to refrain from causing Plaintiff to be wrongfully arrested and/or detained;

c.  to refrain from abusing their authority granted them by law;

d.  to use generally accepted police procedures and tactics that are reasonable and necessary under the circumstances;

e.  to refrain from violating Plaintiff's rights guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

81.     Additionally, these general duties of reasonable care and due care owed to Plaintiff by Defendants STEVENS and CITY OF RAMON (through its employees and agents) include but are not limited to the following specific obligations:

a.  to properly and adequately hire, investigate, train, supervise, monitor, evaluate, and discipline SRPD employees, agents, and/or law enforcement officers to ensure that those employees/agents/officers act at all times in the public interest and in conformance with law;

b.  to make, enforce, and at all times act in conformance with policies and customs on behalf of the SRPD that are lawful and protective of individual rights, including Plaintiff's;

c.  to refrain from making, enforcing, and/or tolerating the wrongful policies and customs set forth above.

82.     Defendants, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiff.

83.     As a direct and proximate result said Defendants' negligence, Plaintiff sustained injuries and damages, and against each and every Defendant are entitled to relief as set forth above and punitive damages against all Defendant law enforcement officers under California law.  For this claim, the Defendant CITY OF SAN RAMON  is vicariously liable for the conduct of its employees and agents pursuant to Cal. Gov. Code § 815.2.

## SEVENTH CAUSE OF ACTION

### Negligence; Personal Injuries

(By Plaintiff against Defendants HYRECAR INC., CARMOMMY, BLOMEKE and DOES 1 through 50)

84.     Plaintiff re-alleges the information set forth in the preceding paragraphs and incorporates them into this cause of action as if they were fully alleged herein.

85.     At all times, HYRECAR INC., CARMOMMY, BLOMEKE and DOES 1-50 owed Plaintiff the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

86.     At all times, each said Defendant owed Plaintiff the duty to act with reasonable care.

87.     These general duties of reasonable care and due care owed to Plaintiff by Defendants include but are not limited to the following specific obligations:

a.  a duty to ensure that vehicles leased to customers, such as Plaintiff in this matter, would not be a subject to a false stolen vehicle report,

b.  a duty to provide customers of leased vehicles, such as Plaintiff in this matter, sufficient notice that said vehicles have been reported as stolen;

c.  a duty to implement procedures and policies protecting customers of leased vehicles, such as Plaintiff in this matter, from being subjected to false stolen vehicle reports.

88.     Defendants, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiff.

89.     As a direct and proximate result of said Defendants' negligence, Plaintiff sustained injuries and damages, and is entitled to relief as set forth above and punitive damages against all Defendants under California law.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief against each and every

Defendant herein, jointly and severally:

1.     For general economic and non-economic damages according to proof;

2.     For special damages according to proof;

3.     For punitive damages where allowed by law;

4.     For equitable relief;

5.     For prejudgment interest;

6.     For costs of suit incurred herein;

7.     For attorney's fees as allowed by law;

8.     For civil penalties as allowed by law;

9.     For such other and further relief as this Court deems just and proper, and

appropriate.

DATED:   December 10, 2021                              THE HALEY LAW OFFICES, P.C.

By:   _____
     Matthew D. Haley, Esq.
     Michael C. Haley, Esq.
     Attorneys for Plaintiff
     ALI BADR

# EXHIBIT A

# HyreCar

# VEHICLE RENTAL AGREEMENT

This Vehicle Rental Agreement ("Agreement") is made between the vehicle owner listed below ("Owner") and the driver temporarily renting ("Driver") the vehicle listed below, including its equipment, tools, tires, accessories, and contents ("Vehicle").

HyreCar Inc. ("HyreCar") is a marketplace technology platform that helps owners of vehicles connect with vehicle drivers in temporary need of a vehicle for use with transportation network companies or delivery services companies ("Ride Share Companies"). **HyreCar does not own vehicles to rent. HyreCar is not a party to this Agreement.**

**KEY RENTAL TERMS**

**<u>Owner</u>**

<u>Name</u>: Car .Mommy

<u>VIN</u>: 4T1BD1FK3HU226481

<u>Vehicle Make & Model</u>: Camry 2017

<u>License Plate State & Number</u>: CA 8LJY156

- Vehicle insurance and registration valid throughout the Rental Period.

**<u>Driver</u>**

<u>Name</u>: Ali Badr

<u>Driver's License State & Number</u>: CA F1236925

**<u>Rental Terms</u>**

Start Date & Time: 08/29/2020 10:54 AM PST

End Date & Time: 12/23/2020 11:07 PM PST

Daily Mileage Max: 400

Daily Rental Price: 58.10

Security Deposit: $0

**Driver Signing Date**: 2020-08-29T00:11:10.000Z

**Owner Signing Date**: 2020-08-29T02:08:00.565Z

1. Term. This Agreement shall commence at the earlier of the Start Date & Time or when Driver takes possession of the Vehicle and shall remain in full force and effect until the later of the End Date & Time or when Vehicle is returned to the Owner ("Rental Period"). The term of this Agreement shall only be modified in accordance with the provisions provided in this Agreement.

a. Voluntary Rental Term Extension. In the event that Owner and Driver mutually agree to an extension of the End Date & Time that is processed through the HyreCar platform, this Agreement will remain valid until the vehicle is returned to the Owner. The Driver will be charged the daily rental price, insurance fees, and other transactions costs that may accrue during that period.

b. Involuntary Rental Term Extension. If the End Date & Time are not voluntarily extended and the Vehicle is not returned within 72 hours (or other such time as required by local law) of the End Date & Time, then, in addition to the additional costs listed in section 2, the Owner may: (i) report the Vehicle as stolen to law enforcement authorities, (ii) take action to repossess the vehicle, and (iii) take any legal action necessary to protect its rights. Additionally, the loss may be reported to one or more credit agencies and or national stolen car databases.

2. Rental Price. Driver shall pay the Daily Rental Price, which includes insurance and transaction fees. Driver authorizes charges to the payment

method on file in an amount equal to all payments and fees under this Agreement as they are incurred. Total price for this rental excludes any late fees, fines, or expenses. Owner is responsible for any applicable local, state, or federal taxes based on the income received from the rental. Driver shall pay all other charges due under this Agreement upon the return of the Vehicle, including but not limited to:

a. charges for optional services selected by the Driver;

c. mileage overage of $.0.25 per mile plus taxes, if applicable;

d. damage to, repair of, or loss of the Vehicle, including without limitation, the loss of use, diminution of the Vehicle's value caused by the damage or repair, administrative and legal fees for claim processing;

e. Daily Rental Price plus an additional $15 late delivery administrative fee, beginning 24 hours after the end of the Rental Period;

f. unless due to the fault of the Owner, all fines, penalties, traffic and/or parking violations, toll fees, court costs, towing and impound charges, and other associated third party costs incurred during the Rental Period;

g. all expenses Owner incurs related to Driver's failure to return the Vehicle, including without limitation, costs of locating and recovering the vehicle;

h. 1.5% interest per month (or the maximum allowed by law), for any amount due which are more than 14 days past due;

i. all costs incurred to collect unpaid amounts due, including debt collection agency, attorney, or other third party costs; and

j. the greater of twenty-five dollars ($25) per day or the maximum amount allowed by law if Driver's payments are stopped, rejected for insufficient funds, or for any other reason the payment from Driver is dishonored.

3. Security Deposit. Driver may be required to pay a Security Deposit at the time of the rental. The Security Deposit will be the first money applied to any balance due at the end of the Rental Period. Driver may be responsible for additional fees or charges in excess of the Security Deposit as otherwise stated in this Agreement or the Terms of Service.

4. Authorized Drivers. Only the Driver listed above is a party to this Agreement. Driver must have a valid driver's license to rent and operate the Vehicle. No one else is permitted to operate the Vehicle. Should any other person operate the Vehicle, including if the Vehicle is lost or stolen, the Driver will be liable for any such activity and the resulting loss or damage. Driver is responsible for all loss or damage caused to Vehicle during the Rental Period.

5. Automobile Insurance. Insurance coverage applicability during the Rental Period is a combination of Owner insurance, HyreCar insurance, and Ride Share Company insurance coverage. Drivers are not required to have their own insurance coverage. However, Driver must be eligible for coverage under HyreCar's current insurance policy, as stated in the HyreCar Policies & Protection Plans, and hold a current Ride Share Company account.

a. Owner Insurance. Owner must have personal automobile insurance on the Vehicle throughout the term of the Rental Period with sufficient limits and coverages as required by the law in the jurisdiction where the Vehicle is registered. **HyreCar's insurance does NOT replace an Owner's requirement to maintain personal or other insurance as required by law.** . Additional information on insurance is available here: https://support.hyrecar.com/hc/en-us? flash_digest=1266dc0d92c657427136810623ca5199da5ecb76

b. HyreCar Insurance. The HyreCar insurance policy is a temporary livery insurance that serves as the primary insurance only when a Driver has picked up a vehicle from an Owner and when the Driver has a Ride Share Company application turned on, but is not engaged in a ride or delivery through a Ride Share Company. The HyreCar insurance policy is only applicable in the United States. The HyreCar insurance policy is secondary to the Ride Share Company insurance when the Driver is engaged in a ride or delivery facilitated by a Ride Share Company application. If Owner or Driver transacts through the HyreCar platform solely to obtain insurance from HyreCar, HyreCar's insurance carrier will deem the applicable coverage null and void. Neither HyreCar nor its insurance carrier will accept any claim on insurance if HyreCar, its insurance carrier, or any third party who investigates the claim finds fraud. Owners and Drivers are encouraged to check the amount and type of available insurance coverage before starting the Rental Period. HyreCar insurance is only valid during the exact date and time of the Rental Period and no claim will be considered on an incident before or after the Rental Period. To be eligible for an insurance claim, Owners have up to 24 hours, excluding holidays or

weekends, (or the time allowed by local law) after the return of the Vehicle to file a claim on any damages that occurred on the Vehicle during the Rental Period.

c. Ride Share Company Insurance. The Ride Share Company insurance is the primary insurance when the Driver is engaged in a ride or delivery through the applicable Ride Share Company application. Please review specific Ride Share Company insurance policies for details regarding their coverages.

6. Cancelation of Insurance Coverage. Insurance coverage provided by HyreCar is only valid during the Rental Period and only if HyreCar receives payment from Owner and Driver. If HyreCar is (a) unable to collect payment from Owner or Driver at any time during the Rental Period; (b) unable to contact Owners and Driver during the Rental Period, then upon giving Owner and Driver 5 days notice, HyreCar may cancel its insurance coverage on the Vehicle. Notice will be deemed received by each party upon sending notice to the contact information on file with HyreCar at the time of the rental.

7. Vehicle Use Restrictions. Driver shall not:

a. permit the vehicle to be operated by any person who is not listed as a Driver under this Agreement;

b. operate the Vehicle or permit it to be operated in violation of law, including without limitation, driving under the influence of alcohol or drugs, or in breach of any traffic rules or regulations;

c. operate the Vehicle or permit it to be operated to commit any violation of law;

d. operate the Vehicle or permit it to be operated for any race, test, or contest;

e. operate the Vehicle or permit it to be operated for the transport of more passengers or goods than the maximum allowable for the Vehicle;

f. operate the Vehicle or permit it to be operated to carry hazardous materials or explosive substances of any kind;

g. operate the Vehicle or permit the Vehicle to be driven or parked on roadways not regularly maintained, or on any roads, beaches, driveways, or surfaces likely to cause damage to the Vehicle;

h. operate the Vehicle or permit the Vehicle to be driven or parked in unsafe areas or where the Vehicle is likely to be damaged;

i. operate the Vehicle or permit the Vehicle to be operated to push or tow any other vehicle;

j. transport any animal in the Vehicle (with the exception of certified or licensed animals for assisting persons with disabilities); and/or

k. allow any person to smoke and/or take or use alcohol or illegal drugs in the Vehicle.

8. Return of Vehicle. Driver shall return the Vehicle at the end of the Rental Period to the agreed upon return location, with the same amount of gas as when the Vehicle was picked up, and in the same condition as Driver received it, except for normal wear and tear. If Driver connects to the Vehicle's navigation/infotainment system for directions, to use the hands-free phone functionality, or otherwise, Driver is responsible for deleting all of Driver's personal data from the Vehicle at the end of the Rental Period. Upon request, Owner shall provide Driver with instructions for how to remove this data from the Vehicle. Additional charges may be incurred if Vehicle is not returned in accordance with this paragraph.

9. Vehicle Maintenance. Owner is required to regularly check the Vehicle for any defects in its operations or safety. Owner affirms that the Vehicle is in safe and roadworthy condition, in good mechanical condition, and in full compliance with all applicable inspection and registration requirements. Owners will only list vehicles with a clean, non-salvaged, non-written off, non-washed, and non-branded title. Owner agrees to respond to any applicable recall or similar safety notices and to complete any recommended action before allowing a Driver to rent the Vehicle.

10. Repair or Loss. Driver shall not service or repair the Vehicle and parts and accessories shall not be repaired or replaced by Driver, without the Owner's prior written consent. Driver shall immediately alert Owner to any damage to or loss of the Vehicle or parts of the Vehicle. Driver shall be responsible for any loss or damage to Vehicle and the loss of use, diminution of the Vehicle's value caused by the damage or repair or replacement of a part of the Vehicle. In the event of an accident, vandalism, or theft affecting the Vehicle, Driver shall report the incident to the Owner and HyreCar within 24 hours, excluding

weekends and holidays. In the event the Vehicle is stolen, Owner and Driver shall report the incident to HyreCar within 24 hours, excluding holidays and weekends, and cooperate with local law enforcement.

11. Condition of the Vehicle. Driver and Owner both acknowledge that each has examined the Vehicle prior to the rental, and that it is in good condition. For insurance coverage to apply, Owner must upload pictures that accurately reflect the condition of the Vehicle at the Start Date & Time of the Rental Period to the HyreCar application. It is recommended that Driver also take accurate pictures of the Vehicle at the beginning and end of the Rental Period to avoid disputes at a later date. OWNER MAKES NO WARRANTY, EXPRESS OR IMPLIED, OR OF SATISFACTORY QUALITY, FITNESS FOR A PARTICULAR PURPOSE, QUALITY, COMPATIBILITY, COURSE OF DEALING, COURSE OF PERFORMANCE, USAGE OF TRADE OR OTHERWISE, AND EXPRESSLY EXCLUDES AND DISCLAIMS ALL WARRANTIES AND REPRESENTATIONS OF ANY KIND, INCLUDING ANY WARRANTIES OF MERCHANTABILITY AND/OR FITNESS FOR A PARTICULAR PURPOSE.

12. Vehicle and Driver Verification. It is the responsibility of the Owner to (a) verify that the Driver has a valid driver's license before providing the Driver with access to the Vehicle; (b) ensure the driver's license matches the name on the reservation; and (c) confirm that the person picking up the Vehicle matches the photograph on the driver's license. It is the responsibility of the Driver to ensure that the vehicle they are renting matches the Vehicle information on the reservation.

13. Vehicle Ownership. Owner shall at all times during the Rental Period retain ownership and title to the Vehicle. Driver shall immediately notify Owner in the event the Vehicle is levied, has a lien attached or is threatened with lien and/or seizure as a result of Driver's action, inaction, possession, or use of the Vehicle. Driver shall indemnify and hold Owner harmless against any and all losses and/or damages caused by such action or inaction.

14. GPS and Telematics. Vehicles may include GPS, telematics technology, or vehicle disabling technology ("Telematic Devices") and some Drivers may have Telematic Devices through applications on their mobile phones. Telematic Devices track vehicle and driver analytics data. Drivers should assume that the Vehicle is enabled with a Telematics Device. Drivers and Owners consent to the data being collected by the Telematic Devices and to this data being used

consistent with the HyreCar Privacy Policy, the privacy policy of the Telematic Device or applications, or the privacy policy of the Owner, if applicable. Telematic Devices must remain on and functioning during the Rental Period. Driver agrees not to tamper with, disable, or remove such Telematics Device for any reason. A breach of this Agreement may result in the activation of vehicle disabling technology. Driver will be held responsible for any damages to or tampering with any Telematics Devices present in the Vehicle.

15. <u>Exculpation</u>. HyreCar is a technology platform which facilitates a marketplace to allow transactions between vehicle owners and vehicle drivers. HyreCar does not own any vehicles nor is it responsible for any actions caused by any Owner or Driver. **As such, both Owner and Driver waive any and all actual or potential claims against HyreCar on any grounds, including, but not limited to, the terms of this Agreement, the rental of any vehicle, insurance, indemnification, or arising out of any lawsuit, claim, or other form of damages or dispute.**

16. <u>Termination</u>. This Agreement shall terminate at the end of the Rental Period. Owner reserves the right to terminate this Agreement earlier upon at least 3 days written notice to Driver or immediately in the event the Owners becomes aware of illegal activity.

17. <u>Indemnification and Liability</u>. Driver shall indemnify, defend and hold harmless Owner from and against any claim, demand, cause of action, loss or liability (including attorney's fees and expenses of litigation) for any property damage or personal injury arising from Driver's use of Vehicle by any cause, except to the extent caused by Owner's gross negligence or willful misconduct. IN NO EVENT SHALL OWNER BE LIABLE FOR ANY INDIRECT, SPECIAL OR CONSEQUENTIAL LOSS OR DAMAGES ARISING FROM DRIVER'S USE OF THE VEHICLE, INCLUDING BUT NOT LIMITED TO LOST PROFITS AND LOST REVENUE, EVEN IF INFORMED OF THE POSSIBILITY OF SUCH DAMAGES.

18. <u>Dispute Resolution</u>. Either party may seek to enforce this Agreement in court. Jurisdiction with respect to any dispute relating to this Agreement and the interpretation thereof shall be in the federal and state courts in the location of the registration of the Vehicle. This Agreement shall be governed and construed under the laws of the state of registration of the Vehicle.

19. Electronic Service. In jurisdictions where electronic service is permitted, Owner and Driver agree and consent to service of any process, including formal legal process in any legal proceedings, by electronic service, including e-mail, private facsimile, and any other forms of electronic communication to any contact point provided in their HyreCar account profile or otherwise provided by Owner or Driver. Owner and Driver agree to deem any service by electronic means to be the same as personal service. In jurisdictions where electronic service is not permitted, the parties will be subject to the requirements of the applicable jurisdiction.

20. Waiver. No failure of Owner to exercise or enforce any rights under this Agreement shall act as a waiver of any subsequent breach(es), and the waiver of any breach shall not act as a waiver of any subsequent breach(es). Owner's acceptance of payment with knowledge of a default by Driver shall not constitute a waiver of any breach.

21. Severability. In the event any provision of this Agreement is held by a court or other tribunal of competent jurisdiction to be unenforceable, that provision will be enforced to the maximum extent permissible under applicable law, and the other provisions of this Agreement will remain in full force and effect. Upon a determination that any term or other provision is invalid or illegal and is material to this Agreement, the parties shall negotiate in good faith to modify this Agreement to reflect the original intent of the parties as closely as possible.

22. Headings. The section headings used in this Agreement are for reference only and shall not be used or relied upon in the interpretation of this Agreement.

23. Survival. Any provisions of this Agreement that are necessary for the enforcement of the terms of this Agreement will survive termination.

24. Entire Agreement. This Agreement represents the entire understanding relating to the subject matter hereof and prevails over any prior or contemporaneous, conflicting, or additional communications between the Owner and Driver.

25. Counterparts. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.